IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:04CV |
| ) | |
| vs. ) | **VERIFIED COMPLAINT** |
| ) | **FOR FORFEITURE** |
| $27,700.00 IN UNITED ) | |
| STATES CURRENCY, ) | |
| ) | |
| Defendant. ) | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $27,700.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about April 18, 2004, the Defendant property was seized by officers of the Omaha Police Department; said seizure took place on land, within the District of Nebraska. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

5. Isidro Coronado has filed a Claim for ownership, pertaining to $18,700.00 of the Defendant property, with the United States Drug Enforcement Administration. Gamalier Flores has

filed a Claim for ownership, pertaining to $9,000.00 of the Defendant property, with the United States Drug Enforcement Administration.

6. On April 18, 2004, Isidro Coronado and Gamalier Flores were in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

   a. On Sunday, April 18, 2004, at 3:25 a.m. Omaha Police Officer Stephen Worley observed a white Chevy Suburban with Wisconsin license plate 846 GVS west bound on I-80 near 110th Street. The Suburban passed Officer Worley and made a lane change in front of Officer Worley. When the Suburban made the lane change, it activated its right turn signal after it began the movement to the right and failed to signal 100 feet prior to the lane change. As the Suburban was directly in front of Officer Worley's cruiser, Officer Worley could see several items hanging from the rear view mirror area of the Suburban which could obstruct the driver's vision.

   b. Officer Worley stopped the Suburban at I-80 and L Street and made contact with the occupants. The driver gave Officer Worley his Wisconsin driver's license which identified him as Isidro Coronado. Mr. Coronado gave Officer Worley the vehicle's registration which showed it to be registered to Cynthia Sandoval. Coronado told Officer Worley that his girlfriend owns the vehicle and that he was driving it to Denver to sell it to a friend of his. Ms. Sandoval

was not in the vehicle. The other occupant of the vehicle gave Officer Worley his Wisconsin driver's license which identified him as Gamalier Flores. Mr. Flores told Officer Worley that he was helping Coronado drive. Officer Worley noticed that the Suburban had a radar detector attached to the center area of the windshield, a baseball cap sitting on the driver's side dashboard and two large dice hanging from the rear view mirror. These items presented a definitely obstruction to the driver of the vehicle. The driver and passenger removed the items when Officer Worley informed them of the violation.

c.  Officer Worley had Mr. Coronado come back to the police cruiser to run a data check on him and the vehicle. Officer Worley learned from Mr. Coronado that his girlfriend purchased the Suburban three weeks ago and the he was going to sell it to a friend of his in Denver. Officer Worley asked how much he was going to sell it for and he said $12,000.00. Mr. Coronado did not produce any letter or document to show that his girlfriend intended or was allowing him to sell the vehicle. Officer Worley noticed the Ms. Sandoval recently paid $375.00 to register the vehicle in Wisconsin. Officer Worley asked how long Mr. Coronado planned on staying in Denver and he said two days. Mr. Coronado told Officer Worley that they intended on flying back. Officer Worley also found out that the Suburban had a high number of miles on it (133,399) on the purchase date of April 8, 2004.

d.  During Officer Worley's contact with Mr. Coronado, Officer Worley observed that Mr. Coronado avoided eye contact with him when speaking.

3

    Officer Worley had brief contact with Mr. Flores and observed that he seemed to be yawning excessively. While waiting for the data check to come back Officer Worley asked Mr. Coronando if there were any drugs, guns or large amounts of currency in the vehicle. Mr. Coronado quickly looked down and away from Officer Worley and said there was not. Officer Worley received the data check back on Mr. Coronado, gave him and Mr. Flores their paperwork back and issued him a Courtesy Citation for failing to signal intent and view obstruction.

e. Officer Worley made the determination to request permission to search the vehicle based on the following indicators: the owner of the Suburban was not present; Mr. Coronado said he was going to sell the Suburban to a friend without the owner present or a signed Title or paperwork indicating the intended sale; the Suburban had just been purchased ten days prior to the stop; the owner paid $375.00 to register the Suburban and was going to sell it 10 days later; Mr. Flores yawned excessively (a sign of nervousness); Mr. Coronado avoided eye contact with Officer Worley during contact ( another sign of nervousness); the vehicle was equipped with a radar detector to avoid Law Enforcement; Mr. Coronado said they planned on a two-day stay and then to fly right back; Officer Worley observed several bags of luggage in the back seat for a two-day stay; and the Suburban had 133,399 miles on it.

f. As Mr. Coronado got out of Officer Worley's cruiser Officer Worley asked Mr. Coronado for permission to search the vehicle. Mr. Coronado just

mumbled something to Officer Worley. Officer Worley asked permission to search again and Mr. Coronado finally asked Officer Worley if he had a warrant. Officer Worley then explained that he did not have a warrant but that he would have his police service dog sniff the exterior of the vehicle. Sergeant Wondra and Officer Nielsen had now arrived as back-up.

g.  Officer Worley asked Mr. Coronado and Mr. Flores to wait in front of the Suburban while Officer Worley had police service dog "Athos" conduct a sniff of the exterior of the vehicle. "Athos" is trained and certified to alert to the odor of illegal drugs. "Athos" alerted and indicated to the seam between the passenger front and rear doors by sniffing intently and scratching. Officer Worley informed Mr. Coronado and Mr. Flores of this and asked them if there were any drugs or large amounts of currency in the vehicle. Both said no, Officer Worley noticed Mr. Coronado looking away and Mr. Flores immediately began picking up small rocks on the road and tossing them. Officer Worley decided to conduct a probable cause search based on "Athos" alert and the above mentioned indicators.

h.  Officer Worley and Officer Nielsen began searching the Suburban. Officer Nielsen informed Officer Worley that he had located a large amount of currency in a yellow backpack, which was on the back seat near where "Athos" had alerted. Officer Worley then went and asked Mr. Coronado and Mr. Flores whose large bundle of money they had located. Mr. Flores then told Officer Worley that he had $9,000.00 located in a yellow backpack.

Officer Worley asked him why he was carrying so much money and Mr. Flores said, "It's not against the law to carry $9,000.00." Officer Worley asked him, "What's the cutoff?" Mr. Coronado said, "$10,000.00." Officer Worley asked the two if there were any more large amounts of money in the vehicle and they both said no. Officer Nielsen then located a black bag on the rear seat, which contained a large amount of currency. Officer Worley went back to the two men and asked them whose black bag had a large amount of money in it. Mr. Flores told Officer Worley that he only had money in the yellow bag. Officer Worley asked Mr. Coronado if it was his and he shook his head. Officer Worley said, "So that's not either of yours?" Mr. Coronado then said, "It's mine." Officer Worley asked how much there was and Mr. Coronado said about $15,000.00. Officer Worley asked him why he carries so much money. Mr. Coronado said he likes money.

i.  Officer Oetter had arrived to assist and Officer Worley searched the vehicle further. Officer Worley located a button on the center console, which operated a hydraulic lift system on the vehicle. Officer Worley was unable to search underneath the vehicle thoroughly due to the "low rider lift system". Based upon Officer Worley's past training and experience, the indicators present, "Athos'" positive alert to the money and the fact that the innocent motoring public does not usually carry currency in the amount of $24,000.00 while driving across country, Officer Worley concluded that the currency may be the result of drug transactions.

j.  Officer Nielsen transported the bags containing the currency and Mr. Flores. Officer Worley transported Mr. Coronado to the impound lot. The Suburban was towed to the impound lot as well. Officer Worley searched the vehicle further but located no other evidence in the vehicle. Officer Worley and Officer Nielsen went through the bags again and Officer Worley located more currency located in the pants pocket of a pair of jeans in the black bag. Officers asked Mr. Flores and Mr. Coronado how much money they had on their person and they both said about $500-$600 each. With the bags and currency removed from the Suburban, Officer Worley had "Athos" sniff the vehicle again. "Athos" did not give an alert and indication to the vehicle.

k.  Officer Green conducted an interview with both parties concerning their actions, the currency and the investigation. Officer Green advised Officer Worley to issue a receipt and inventory form to Mr. Flores and Mr. Coronado for the currency located in the bags. The currency on their persons was not seized.

7. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture

should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

.

                      UNITED STATES OF AMERICA,
                      Plaintiff

                      MICHAEL G. HEAVICAN
                      United States Attorney

By: _____
     NANCY A. SVOBODA (#17429)
     Assistant U.S. Attorney
     1620 Dodge Street, Suite 1400
     Omaha, Nebraska 68102-1506
     (402) 661-3700

## VERIFICATION

STATE OF NEBRASKA   )
                    ) ss.
COUNTY OF DOUGLAS   )

Pursuant to Rule C(2), Supplemental Rules of Certain Admiralty and Maritime Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 30th day of November, 2004.



Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney